IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2020

## DONDRE JOHNSON V. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 14-01032     Chris Craft, Judge

_____

**No. W2019-00741-CCA-R3-PC**

_____

The Petitioner, Dondre Johnson, was convicted of first degree felony murder and received a life sentence. He filed a post-conviction petition, asserting that he received ineffective assistance of counsel because his trial counsel did not file a motion to suppress the evidence stemming from his seizure. After a thorough review of the record, we affirm the post-conviction court's judgment denying relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Terrell Tooten, Cordova, Tennessee, for the appellant, Dondre Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Petitioner's conviction is the result of his participation in an attempted robbery and the fatal shooting of an innocent victim in downtown Memphis on August 12, 2013. Law enforcement apprehended the Petitioner and two co-defendants in a vehicle shortly after the crime, and the State's evidence consisted in part of evidence obtained in the course of the seizure, including physical evidence recovered from the

vehicle and inculpatory statements made by the Petitioner and one of the co-defendants, Ms. Jerrica Norfleet.

**Trial**

Three bystanders witnessed the murder and testified at trial. One testified that he heard a gunshot and saw a man flee into a car; another testified that she saw the shooting and witnessed two men jump into a light green or gray Pontiac; the third testified that she heard a shot and saw a woman and two men flee in a "'green Grand Am.'" *State v. Dondre Johnson*, No. W2015-02401-CCA-R3-CD, 2017 WL 937661, at *1 (Tenn. Crim. App. Mar. 8, 2017).

The Petitioner and his two co-defendants were apprehended shortly thereafter by Officer Ashton Britton of the Memphis Police Department, who testified that he had received a call on his radio alerting him about the shooting and describing the vehicle. *Id.* at *2. Our opinion on direct appeal summarized his testimony regarding the seizure as follows:

> Officer Britton proceeded to the nearby Foote Homes area to drive around and look for the car. In the parking lot of the Foote Homes apartment complex, Officer Britton saw a car with its parking lights on. Officer Britton testified that, in his experience, this was unusual, and there had been a lot of recent car break-ins in the area, so he proceeded to investigate further. Officer Britton testified that the car appeared to be unoccupied but, upon approaching the car, he saw "the top of an individual's head, duck down into the vehicle." Officer Britton then drew his gun and told the individuals in the car to put their hands up. At that point, Officer Britton testified that he realized their car matched the description of the earlier broadcast and he called for backup. Officer Britton testified that the individual in the front seat kept dropping his hands and the individual in the back seat attempted to get out of the car. Officer Britton testified that he told them if they got out of the car he would shoot them. Officer Britton identified the [Petitioner] at trial as the individual sitting in the back passenger seat who tried to open the door.

*Id.*

As a result of the seizure and subsequent search of the vehicle, the State obtained a wealth of information implicating the three in the murder. A weapon found in the vehicle was determined to have fired the shot which killed the victim. *Id.* at *4. The vehicle also contained a ski mask. *Id.* at *2. Ms. Norfleet, who was the girlfriend of co-defendant

Mr. Mario Patterson and who was charged as an accessory after the fact, gave a statement to police and testimony at trial regarding the events that led to the crime, including the fact that the Petitioner and Mr. Patterson were looking to commit a robbery, that they had initially targeted and then rejected other randomly chosen victims, that the Petitioner was wielding the gun, and that the Petitioner summarized the shooting by saying, "'That n**** said, get the [f***] out of here, I should have got personal and shot that n**** three more times.'" *Id.* at *3. Ms. Norfleet also identified a photograph she had taken on her cell phone which depicted the Petitioner wearing the ski mask and holding the gun immediately before the murder. *Id.* at *2. She stated she had seen the Petitioner once or twice but was not acquainted with him prior to that night. *Id.*

After he was apprehended, the Petitioner gave a statement acknowledging that he and the co-defendants were attempting to rob the victim and that he shot the victim. *Id.* at *3-4. According to the Petitioner's statement, the Petitioner decided to flee in the middle of the attempted robbery, and the gun discharged as the Petitioner was beginning to flee. *Id.* at *4. The Petitioner also stated that Mr. Patterson had given him the gun and mask because Mr. Patterson needed money. *Id.*

The jury convicted the Petitioner of first degree felony murder, and he received a life sentence. *Id.* at *5. On appeal, he challenged the sufficiency of the evidence, and this court affirmed the conviction. *Id.* at *6.

## Post-Conviction Proceedings

The Petitioner filed a post-conviction petition alleging various errors on the part of trial counsel. He was appointed post-conviction counsel and filed an amended petition incorporating his pro se petition and asserting that he received ineffective assistance of counsel because trial counsel did not move to suppress all of the evidence which resulted from Officer Britton's seizure of the suspects and the vehicle.

At the hearing, trial counsel testified that she did not recall whether she had filed a motion to suppress and that the record would reflect whether she did. She stated that her general practice was to speak to clients about the circumstances of their arrest or any statement and to file a motion to suppress if she thought there were grounds to challenge the evidence, and she testified that she followed that practice in this case. She recalled that several witnesses had described the vehicle and that a description of the vehicle was released to law enforcement. Trial counsel testified that Officer Britton's initial reason for approaching the vehicle, which was backed into a parking spot, was that the lights were on in the middle of the night, and she recalled that Officer Britton subsequently saw movement in the car.

Trial counsel stated that Ms. Norfleet made a statement to police "[a]lmost immediately upon arrest." Law enforcement obtained a warrant to search the vehicle and recovered the mask, gun, and other items. A copy of the search warrant for a gray Pontiac Grand Am was introduced at the post-conviction hearing.

Trial counsel elaborated that she saw no legal basis to file a motion to suppress. In particular, she noted that the Petitioner had no standing to contest the search of the vehicle, which was owned by Ms. Norfleet, who was also the driver.

Trial counsel noted that the Petitioner was initially represented by the capital defense team and that she had access to the capital defense team's investigation into the case. Trial counsel attempted to depict the Petitioner as less culpable than Mr. Patterson because Mr. Patterson had supplied the gun and mask, and trial counsel attempted to attack the credibility of Ms. Norfleet, who claimed she did not know that the others were planning a robbery. Trial counsel recalled that the photograph was particularly damaging and that the crime came across as an act of senseless and random violence because the victim was a college student walking from a restaurant to his car. The State did not make any plea offers.

The Petitioner testified that he was arrested in the back seat of the vehicle and that the vehicle was parked and not running. When the officer saw them in the car, the officer drew his gun and told them he would shoot if they moved. The Petitioner testified that no motion to suppress was filed in his case and that all the statements to law enforcement were made after he and his co-defendants were arrested in the vehicle. He agreed that the car belonged to Ms. Norfleet and that she was driving. He also agreed that he ducked down when he saw Officer Britton and that he was informed of his rights before he gave his statement.

The post-conviction court conducted a thorough and detailed analysis of the Petitioner's post-conviction claims. Regarding the sole issue raised on appeal, the failure to file a motion to suppress, the post-conviction court concluded that the physical evidence was obtained pursuant to a warrant and that the Petitioner had no expectation of privacy in the vehicle. The post-conviction court also concluded that Officer Britton had reasonable suspicion to support an investigatory detention based on the fact that the vehicle was stopped with its lights on and based on his observation that there were individuals concealing themselves inside the vehicle. The court determined that there was probable cause to detain the suspects once Officer Britton realized the vehicle and occupants matched the description of those involved in the robbery and shooting. Accordingly, the post-conviction court concluded that the motion to suppress would have been denied and that the Petitioner had not established deficiency or prejudice.

- 4 -

**ANALYSIS**

The Post-Conviction Procedure Act provides for relief when a petitioner's conviction or sentence is void or voidable due to the abridgment of a right guaranteed by the United States Constitution or by the Tennessee Constitution. T.C.A. § 40-30-103. The Petitioner here claims that his sentence is voidable because he received ineffective assistance from his trial counsel. A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. State*, 485 S.W.3d 411, 419 (Tenn. 2016). An appellate court reviews de novo with no presumption of correctness the post-conviction court's conclusions of law, its determinations of mixed questions of law and fact, and its application of law to factual findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). The post-conviction court's factual findings are conclusive on appeal unless the record preponderates otherwise. *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). An appellate court does not reweigh or reevaluate the evidence or substitute its own inferences for those of the fact-finder. *Kendrick*, 454 S.W.3d at 457. On appeal, we defer to the post-conviction court's findings regarding witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence. *Id.* The petitioner bears the burden of demonstrating the allegations of fact entitling him to relief by clear and convincing evidence. T.C.A. § 40-30-110(f).

A person accused of a crime is entitled to the assistance of counsel in criminal proceedings under the Sixth Amendment to the United States Constitution and under article I, section 9 of the Tennessee Constitution. These provisions guarantee the reasonably effective assistance of counsel. *Nesbit*, 452 S.W.3d at 786. The deprivation of this right is a cognizable claim under the Post-Conviction Procedure Act. *Moore*, 485 S.W.3d at 418. To prevail on a claim, the petitioner must show that trial counsel's representation "'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). In order to demonstrate that he received ineffective assistance of counsel, a petitioner must show both that trial counsel performed deficiently and that the deficient performance prejudiced the defense. *Nesbit*, 452 S.W.3d at 786 (citing *Strickland*, 466 U.S. at 687). Failure to prove either deficiency or prejudice precludes relief, and the court need not address both components if the petitioner has failed to make a showing on either. *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011).

To show deficient performance, a petitioner must demonstrate that "'counsel's representation fell below an objective standard of reasonableness' guided by 'professional norms' prevailing at the time of trial." *Felts*, 354 S.W.3d at 276 (quoting *Strickland*, 466 U.S. at 688). In other words, the petitioner must demonstrate that counsel's errors were "'so serious that counsel was not functioning as the "counsel"

guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). Counsel's performance is not measured by "'20-20 hindsight.'" *Id.* at 277 (quoting *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). Instead, the court applies a strong presumption that counsel's performance was within the bounds of reasonable professional assistance. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 690-91).

To show prejudice, a petitioner must establish that there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Felts*, 354 S.W.3d at 277 (quoting *Strickland*, 466 U.S. at 694). The question at its core is "'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

The Petitioner's sole issue on appeal is the assertion that trial counsel provided ineffective assistance when she did not file a motion to suppress the evidence obtained as a result of Officer Britton's seizure. "In order to succeed in proving ineffective assistance of counsel with respect to counsel's failure to file a motion to suppress the evidence, [a petitioner] must satisfy both prongs of the *Strickland* test, showing that counsel's failure to file the motion was deficient and that the deficient performance prejudiced the defense." *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006), *abrogated on other grounds by Brown v. Jordan*, 563 S.W.3d 196, 202 (Tenn. 2018). Accordingly, the Petitioner must demonstrate a reasonable probability that, had the motion been filed, the outcome of the proceeding would have been different. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("[T]he defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."); *Gary Randall Yarnell v. State*, No. E2004-01762-CCA-R3-PC, 2005 WL 1981471, at *5 (Tenn. Crim. App. Aug. 15, 2005) ("To prevail on either or both of these ineffective-assistance complaints, the petitioner must demonstrate that the motions were meritorious.").

Insofar as the Petitioner asserts trial counsel should have challenged the physical evidence recovered from the vehicle, we conclude that trial counsel's decision not to file a motion to suppress was not deficient or prejudicial because the Petitioner lacked standing to contest the search. When the accused moves to suppress evidence based on a

search, he or she bears the burden of establishing standing to challenge the search, or a reasonable expectation of privacy in the place or thing being searched. *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) (concluding that the driver of the vehicle had a reasonable expectation of privacy in the vehicle). In evaluating whether the accused has standing to contest a search, we examine: 1) ownership of the property; 2) whether the accused has a possessory interest in the item seized; 3) whether the accused has a possessory interest in the place searched; 4) whether the accused has a right to exclude others from that place; 5) whether the accused has demonstrated a subjective expectation that the place would remain free from governmental invasion; 6) whether the accused took normal precautions to maintain privacy; and 7) whether the accused was legitimately on the premises. *Id.* (citing *United States v. Haydel*, 649 F.2d 1152 (5th Cir. 1981)).

The Petitioner was a passenger who had no ownership or possessory interest in the car, was not driving the car, asserted no possessory interest in the property seized, and presented no evidence of a subjective expectation of privacy in or ability to exclude individuals from the car, which belonged to Ms. Norfleet, with whom he was not acquainted prior to the night of the crime. We conclude the Petitioner did not have standing to contest the search of the vehicle. *See State v. Marvin Wendell Kelley*, No. M2011-02260-CCA-R3-CD, 2013 WL 5827646, at *6 (Tenn. Crim. App. Oct. 29, 2013) (concluding that the defendant lacked standing to contest the search of the trunk of a vehicle in which he was a mere passenger); *State v. Maurice Lashaun Nash*, No. W2001-01703-CCA-R3-CD, 2002 WL 1905328, at *4 (Tenn. Crim. App. Aug. 14, 2002) (a passenger who had no possessory interest in the car and who presented no evidence of a subjective expectation of privacy could not challenge the search), *rev'd on other grounds by State v. Nash*, 104 S.W.3d 495 (Tenn. 2003); *State v. James David Lamor Perry*, No. E1999-00271-CCA-R3-CD, 2000 WL 1246577, at *5 (Tenn. Crim. App. Sept. 5, 2000) (concluding that a passenger with no ownership or possessory interest who presented no evidence of a subjective expectation of privacy did not have standing to challenge the search of the vehicle); *State v. McAdams*, 640 S.W.2d 49, 51 (Tenn. Crim. App. 1982) (the occupants of a vehicle had no standing to contest search when they did not assert any ownership of the vehicle or of the items seized and showed no reasonable expectation of privacy in the vehicle)). Accordingly, any motion to suppress would not have resulted in the suppression at the Petitioner's trial of the gun which was identified as the weapon used in the murder or of the photograph of the Petitioner wearing a mask and wielding the gun shortly before the crime.

Likewise, the Petitioner would not have succeeded in a challenge to the legality of Ms. Norfleet's seizure or to her subsequent testimony. *See State v. Strickland*, 532 S.W.2d 912, 923 (Tenn. 1975) (concluding that the petitioners lacked standing to challenge a co-defendant's confession and subsequent testimony because "[i]llegally

obtained evidence may be used against one whose rights were not violated in the seizure of that evidence" and the co-defendant's testimony was "an independent act of his own free will sufficient to 'purge the primary taint' of the unlawful arrest and subsequent confession"); *State v. Ronallen Hardy*, No. M2008-00381-CCA-R3-CD, 2009 WL 2733821, at *5 (Tenn. Crim. App. Aug. 31, 2009) (quoting *United States v. Padilla*, 508 U.S. 77, 81-82 (1993), for the proposition that "'suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence'"); 3 Crim. Proc. § 9.1(a) n.5 (4th ed.) ("As for seizure of a person, one person lacks standing to object to the seizure of another person."); *see also State v. Austin*, 87 S.W.3d 447, 479 (Tenn. 2002) (concluding that "[a] criminal defendant lacks standing to complain of the violation of a third party's Fifth Amendment privilege against self-incrimination" because the right is "personal and cannot be vicariously asserted") (appendix). We conclude that trial counsel's decision not to file a motion to suppress this evidence was neither deficient nor prejudicial because Ms. Norfleet testified at trial and because the Petitioner lacked standing to contest the search or the seizure at issue.

The Petitioner also asserts that trial counsel should have challenged the admissibility of the Petitioner's own inculpatory statements based on the alleged illegality of the seizure. However, we conclude that the Petitioner cannot show prejudice resulting from trial counsel's actions. The proof at trial established that the victim was murdered and that one eyewitness saw a man get into a car, another eyewitness saw the shooting and saw two men get into a light green or gray Pontiac, and a third eyewitness saw a woman and two men flee in a "'green Grand Am.'" The Petitioner and the two co-defendants, a man and a woman, were apprehended shortly after the crime in a nearby area attempting to conceal themselves in a gray Pontiac Grand Am. The vehicle contained the gun used to murder the victim and a photograph of the Petitioner, wielding the gun and wearing a ski mask, taken shortly before the crime. Ms. Norfleet gave a statement to police and testified that the Petitioner and Mr. Patterson had planned a robbery, that the Petitioner was in possession of the gun, and that the Petitioner acknowledged to her that he shot the victim during the attempted robbery. The Petitioner was convicted of felony murder committed in the perpetration of attempted robbery. We conclude that there is not a reasonable probability that the results of the proceeding would have been different had the Petitioner's inculpatory statement been excluded. *See Davis v. State*, 912 S.W.2d 689, 700 (Tenn. 1995) (concluding that the petitioner failed to establish that the suppression of his statement would have affected the verdict, especially in light of the strong physical evidence against him); *Edgar Ray Bettis v. State*, No. M2017-01845-CCA-R3-PC, 2018 WL 3342830, at *7 (Tenn. Crim. App. July 9, 2018), *perm. app. denied* (Tenn. Nov. 14, 2018) (concluding that the petitioner did not show a reasonable probability that the suppression of his statement would have affected the outcome of the trial, given the physical evidence implicating him); *Broderick Joseph*

*Smith v. State*, No. M2012-02705-CCA-R3-PC, 2013 WL 5701657, at *8 (Tenn. Crim. App. Oct. 18, 2013) (there was no prejudice in the failure to file a motion to suppress when there was substantial evidence against the petitioner). Because the Petitioner has not shown prejudice, he is not entitled to relief.

## CONCLUSION

Based on the foregoing facts and analysis, we affirm the post-conviction court's judgment.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE